**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA,
ex. rel. DARLENE THOMAS and JOHN O'NEILL**     **PLAINTIFFS**

**v.**     **CIVIL ACTION NO. 2:16-cv-143-KS-MTP**

**ST. JOSEPH HOSPICE, LLC**     **DEFENDANT**

**ORDER**

THIS MATTER is before the Court on the Motion for Protective Order and to Quash [75] filed by Defendants St. Joseph Hospice, LLC and St. Joseph Holdings, LLC and the Motion to Compel [77] filed by Relators John O'Neill and Darlene Thomas. Having considered the parties' submissions, the record, and the applicable law, the Court finds that the Motions [75] [77] should be granted in part and denied in part.

On September 14, 2016, Relators filed a sealed complaint pursuant to the *qui tam* provisions of the False Claims Act ("FCA")[1] against Defendants. Relator O'Neill was the executive director of Defendants' office in Biloxi, Mississippi, and Relator Thomas was the director of nursing at Defendants' office in Hattiesburg, Mississippi. Relators claim that Defendants violated the FCA and Anti-Kickback Statute[2] by providing bonuses and incentives to medical directors and employees for referrals, improper certifications of terminal illness, and improper alterations of patient diagnoses to maintain Medicare reimbursement status. On June 30, 2017, the Government elected to not intervene in the *qui tam* action. *See* Notice [11]. On June 7, 2019, the Court entered a Case Management Order [64].

---

[1] *See* 31 U.S.C. §§ 3729-3733.

[2] *See* 42 U.S.C. § 1320a-7b(b).

On July 17, 2019, Relators served their first set of requests for production on Defendants. *See* [77-1]. On August 16, 2019, Defendants responded to Relators' discovery requests. *See* [75-6]. On January 7, 2020, Relators served their second set of requests for production on Defendants. *See* [77-6]. On February 6, 2020 Defendants responded to Relators' additional discovery requests. *See* [77-7].

On February 18, 2020, Relators filed their Motion to Compel [77], arguing that the Court should compel Defendants to produce additional information responsive to Relators' first and second set of requests for production. According to Relators, Defendants (1) provided no responsive documents for certain requests; (2) limited their production to documents from January 1, 2013 to December 31, 2014; (3) limited their production to only the Mississippi locations of St. Joseph Hospice; (4) refused to produce the patient files that were previously produced to the Government; and (5) failed to produce certain documents responsive to Request for Production No. 3.[3]

On February 18, 2020, Defendants filed a Motion for Protective Order and to Quash Notice of 30(b)(6) Deposition [75]. In their Motion [75], Defendants argue that the Court should enter an order (1) limiting discovery to information from January 1, 2013 to December 31, 2014 and relating to St. Joseph Hospice of Southern Mississippi; (2) limiting discovery related to "changing patient diagnoses" to information from August of 2014 to December 31, 2014; and (3) precluding discovery of patient files that were previously produced to the Government.

---

[3] Relators complain that Defendants provided no documents in response to Request Nos. 12, 16, 19, 23, 24, 25, 26, 27, 28, 31, 35, 38, 39, 40, 41, 42, 47, 48, and 49; Defendants limited their production based on time and locations in response to Request Nos. 6, 8, 9, 13, 14, 15, 21, 29, 30, 32, 33, 34, 43, 44, 45, and 46; and Defendants refused to produce files that were previously produced to the Government in response to Request No. 50.

Additionally, Defendants request that the Court quash the Notice of 30(b)(6) Deposition of St. Joseph [74].

Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefits.

This Rule also specifies that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute. Finding a just and appropriate balance in the discovery process is one of the key responsibilities of the Court, and "[i]t is well established that the scope of discovery is within the sound discretion of the trial court." *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009).

**Time Period and Other Entities Objections**

St. Joseph Holdings, LLC, manages fourteen different hospice providers in Mississippi, Louisiana, Alabama, and Texas. Relator John O'Neill worked for the Biloxi, Mississippi location of St. Joseph Hospice of Southern Mississippi from June of 2014 to September of 2014. Relator Darlene Thomas worked for the Hattiesburg, Mississippi location of St. Joseph Hospice of Southern Mississippi from November of 2013 to July of 2014. Many of Relators' discovery requests seek documents from "January 1, 2013, to the present" and from the fourteen different hospices located in Mississippi, Louisiana, Alabama, and Texas.

Included in Defendants' responses to Relators' discovery requests were the following objections:

> 'Time Period Objection:' St. Joseph objects to the 'relevant time period' defined as January 1, 2013, to the present, as overbroad, unduly burdensome, not relevant to Relators' claims, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case, and inconsistent with the personal knowledge requirement of *qui tam* lawsuits. St. Joseph asserts that a reasonable, relevant time period for discovery is January 1, 2013, through December 31, 2014, and will only produce documents for that time period.
>
> 'Other Entities Objection:' St. Joseph objects to these requests to the extent they seek information from or related to entities other than St. Joseph Holdings, L.L.C., and St. Joseph Hospice of Southern Mississippi, L.L.C., by whom Relators were employed and to which Relators' remaining claims and knowledge are limited. St. Joseph asserts that requests related to other locations and entities are overbroad, unduly burdensome, not relevant to Relators' claims, not reasonably calculated to lead to the discovery of admissible evidence, not proportional to the needs of the case, and inconsistent with the personal knowledge requirement of *qui tam* lawsuits.

*See* [75-6] at 2-3; [77-7] at 2-3.

Thus, Defendants produced documents from January 1, 2013, through December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi. In their Motion to Compel [77] and in their Response [81] to the Motion for Protective Order [75], Relators argue that discovery should not be limited to the terms of their employment or the Mississippi hospice locations. According to Relators, these are the disputed issues in Request Nos. 6, 8, 9, 13, 14, 15, 21, 29, 30, 32, 33, 34, 43, 44, 45, and 46.

Relators argue that information from 2013 to the present is relevant to the claims asserted in their Second Amended Complaint [45] ("Complaint"). Relators point out that the Complaint contains the following allegation: "Except as specifically noted in the Complaint, the allegations herein apply to the time period of 2013 through the present." *See* [45] at 6. Relators also point out that they mentioned the "hospice providers in Louisiana, Mississippi, Alabama, and Texas" and referenced telephonic conferences concerning referral information for all hospice locations,

4

the tracking of employee referrals for all locations, and a directive to change patient diagnosis codes sent to all locations. *See* [45] at 6, 20, 25, 32-33.

Additionally, Relators call attention to Defendants' Motion to Dismiss [47] in which Defendants argued that Relators failed to comply with Fed. R. Civ. P. 9(b) which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Relators point out that, in its Order [61] granting in part and denying in part the Motion to Dismiss [47], the Court did not dismiss any claims based on the time period alleged or the locations mentioned.[4]

Defendants counter by asserting that all of the specific examples of alleged wrongdoing and all of the patients identified in the Complaint [45] are from the hospices in Mississippi during the Relators' period of employment. Defendants assert that the only allegations concerning wrongdoing outside the Mississippi hospices and outside Relators' period of employment are general, unsubstantiated allegations. Defendants argue that, based on Relators' allegations, discovery should be limited to information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi.

The Court does not agree with Defendants that the nature of Relators' allegations necessarily requires the Court to limit all discovery in this case to information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi. Relators are permitted to conduct discovery of information relevant to their claims. *See U.S. ex rel. Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005). The Court did not dismiss Relators' claims concerning ongoing wrongdoing or wrongdoing outside of Mississippi, and the

---

[4] The Court dismissed Relators' claims related to backdated Certifications of Terminal Illness and face-to-face attestations. *See* Order [61].

Court recognizes that "Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

However, "Rule 9(b) should not be made to shoulder all the burden of policing abusive discovery. Its balance draws upon the vigilant hand of the district court judge." *Id*. at 191. Surviving a motion to dismiss, alone, does not justify the burden and expense associated with expansive, unfettered discovery. Courts have recognized that *qui tam* actions come with a high risk for discovery that imposes undue burden and expense. Defendants assert that the limited discovery already conducted has been expensive and time-consuming. Defendants have produced both paper and electronic records. According to Defendants, their hospice providers did not have a centralized server and multiple locations are now closed, which resulted in Defendants physically searching paper copies, old computers, and old electronic medical record systems to find responsive materials.

The "sensible course" in *qui tam* actions such as this one is to provide the parties an initial period of discovery limited to the locations and time periods which are the settings for the relators' specific allegations, while reserving the option of expanding discovery in the event the information gathered during the initial discovery period supports the relators' allegations. *See U.S., ex rel. Carpenter v. Abbott Laboratories, Inc.*, 723 F. Supp. 2d 395, 409-10 (D. Mass. 2010); *U.S. ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 17 (D. Mass. 2008) (limiting discovery initially to the state of Indiana to probe the validity of the kickback allegations before considering whether to authorize nationwide discovery); *U.S. v. Medtronic, Inc.*, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (relator "brandishes a broadsword where a scalpel would suffice and the burden of discovery, at least at this time, outweighs the relevancy."). This course

protects defendants from unduly burdensome and potentially unnecessary discovery while providing relators an opportunity to "test the waters" and broaden the scope of discovery should their "allegations ring true." *See U.S. ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226, at *7 (E.D. Penn. Aug. 27, 2013).

In their Complaint, Relators focus on events which occurred at the south Mississippi hospices during the Relators' employment. Relators' specific, particularized allegations should provide the time and scope of initial discovery. Relators have not come forward with evidence demonstrating that discovery should be expanded beyond information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi. Accordingly, the Court finds that, at this time, discovery should be limited to information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi.

The Court realizes that the practical effect of this ruling may limit much of the discovery in this case to information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi because the discovery deadline runs on April 15, 2020. *See* Order [73]. Local Rule 7(b)(2)(C) provides that "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline." Defendants responded to Relators' discovery requests and raised their time period and other entities objections on August 16, 2019. *See* [75-6]. Relators waited more than six months to challenge Defendants' objection, and now, the discovery deadline is less than one month away.[5] It is

---

[5] The Court previously noted that the parties "brushed aside their discovery responsibilities, without Court approval." *See* Order [73].

unlikely that a discovery motion could be briefed, a ruling handed down, and the order effectuated prior to the discovery deadline.[6]

**"Changing Patient Diagnoses"**

Defendants argue that discovery of information concerning "changing patient diagnosis" should be limited even further, to August of 2014 through December 31, 2014. Defendants argue that Relators' claims concerning "changing patient diagnoses" arise from events which took place no earlier than August of 2014 when the Centers for Medicare & Medicaid Services issued updated guidelines concerning hospice reimbursements. Indeed, in their Complaint, Relators alleged that "Medicare changed/ended reimbursement for certain hospice diagnosis codes including dementia and adult failure to thrive, effective October 2014. Defendant instructed staff to change patient diagnosis to something that allowed reimbursement." *See* [45] at 32. Considering Defendants' time-period objections and the allegations in Relators' Complaint, the Court finds that, at this time, discovery of information concerning "changing patient diagnosis" should be limited to August of 2014 through December 31, 2014.

**Administrative Subpoena**

On May 2, 2018, the Department of Health and Human Services, Office of Inspector General, issued an administrative subpoena to Defendant St. Joseph Hospice, LLC, requesting, *inter alia*, the medical files for 282 of St. Joseph's hospice patients. *See* Subpoena [55-1]. On January 7, 2020, Relators served their second set of requests for production, which consisted of the following request:

---

[6] Defendants argued that the instant Motion to Compel [77] should be dismissed as untimely. The Court, however, finds that there is sufficient time to effectuate its rulings on the instant Motion to Compel [77] before the discovery deadline (considering the limitations placed on discovery).

8

> Request No. 50: All documents provided to the United States Department of Justice, FBI, U.S. Attorney's Office for the Southern District of Mississippi, Department of Health and Human Services, or HHS-OIG by Defendants, pursuant to any request by the foregoing United States agencies, since the filing of the complaint in this case.

*See* [77-6]. On February 6, 2020, Defendants responded to this request by raising the time period and other entities objections and arguing that the request was not relevant to the claims in the Complaint. *See* [77-7].

Hospice care is for people with a life expectancy of six months or less. Defendants assert that the administrative subpoena sought information concerning patients' length of stay in hospice. Defendants argue that such information is irrelevant to the claims at issue in this case. Relators argue that the subpoenas did not simply seek information concerning patients' length of stay, and even if it did, the length of a patient's stay is related to improper referrals to hospice. The Court finds that this information is relevant to Relators' claims.

Defendants also argue that this information should not be produced because the administrative subpoena sought information from February 1, 2015 through May 2, 2018 and sought information from entities outside of Mississippi. The Court previously determined that the allegations raised and the burdens of discovery necessitated a phased approach to discovery. Thus, the Court limited initial discovery to information from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi. The Court, however, finds that these limitations should not apply to the information previously produced in response to the administrative subpoena. This request does not place an undue burden on Defendants, as they previously compiled and produced the requested information to the Government. Defendants should produce this information to relators within fourteen days.

9

**Request for Production No. 3**

Request No. 3: All documents listed or referenced in Defendants' Initial Disclosures.

In their Motion to Compel [77], Relators assert that in response to this request, Defendants stated they would produce patient charts and billing records, but have failed to do so. In response, Defendants assert that production of patients' charts listed in the initial disclosures took longer than anticipated. According to Defendants, many charts have been produced and the remaining charts are being produced. Defendants also assert that they have now produced all billing records from 2013 and 2014. The Court finds that the patient charts are overdue and hereby directs Defendants to produce them within fourteen days.

**Various Requests for Production**

In their Motion to Compel [77], Relators assert that that they have received no responsive documents for the following requests for production.

**Request No. 12**: All documents evidencing, reflecting, or concerning hospice election forms signed by patients.

According to Defendants, they have agreed to produce the election forms for patients named in the Complaint. The Court, however, finds that the election forms for *all* patients at St. Joseph Hospice of Southern Mississippi from January 1, 2013 to December 31, 2014 should be produced within fourteen days.

**Request Nos. 16, 19 and 23-25**: These requests seek all documents evidencing, reflecting, or concerning dinners with and gifts purchased for Dr. Chevis; sports tickets provided to medical directors; gift boxes sent out to referring physicians; gift cards sent to referring physicians; rounds of golf played with and/or paid for by St. Joseph for medical directors.

According to Defendants they have agreed to produce responsive documents from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi.

The Court finds that these limitations are proper, but finds that the production is overdue and should be produced within fourteen days.

**Request No. 26**: All documents evidencing, reflecting, or concerning the house account at Bacchus Food and Drink in Gulfport, Mississippi

According to Defendants, they have agreed to produce responsive documents from 2013 to 2014. The Court finds that this limitation is proper, but finds that the production is overdue and should be produced within fourteen days.

**Request No. 27**: All documents evidencing, reflecting, or concerning claims submitted to Medicare for patients identified in paragraphs 47, 48, 49 in the Second Amended Complaint.

According to Defendants, they have agreed to produce the claims submitted to Medicare, but Relators have not yet provided the full names of the patients identified in the Complaint. The Court finds that Relators should provide the names of the patients within three days of the date of this order and Defendants should produce the claims submitted to Medicare within fourteen days of the production of the names.

**Request No. 28**: All documents evidencing, reflecting, or concerning claims submitted to Medicare for patients referred to St. Joseph by Medical Directors. Please provide this information by individual Medical Director.

According to Defendants, they have agreed to produce referral and claim documents for the patients identified in the Complaint for the years 2013 to 2014. The Court, however, finds that the referral and claim documents for *all* patients at St. Joseph Hospice of Southern Mississippi from January 1, 2013 to December 31, 2014 should be produced within fourteen days.

**Request No. 31**: All documents evidencing, reflecting, or concerning the bonus paid and associated claims for payment to federal payers for the patient identified in paragraph 54 of the Second Amended Complaint.

Defendants assert that they have produced all of this information. Thus, concerning Request No. 31, the Motion to Compel is denied as moot.

**Request No. 35**: All documents evidencing, reflecting, or concerning claims for payment to federal payers for patients listed in paragraph 59 of the Second Amended Complaint.

Defendants assert that all billing records which could be found for these two patients during the relevant time period have been produced. Thus, concerning Request No. 35, the Motion to Compel is denied as moot.

**Request No. 38**: All documents evidencing, reflecting, or concerning instruction, policies, and or communications to change diagnosis codes for patients with non-payable codes Debility 799.3, 780.79, R53.81 and Adult Failure to Thrive 783.7, R62.7 to a payable diagnosis code.

According to Defendants, they have agreed to provide responsive documents from January 1, 2013 to December 31, 2014 relating to St. Joseph Hospice of Southern Mississippi. The Court finds that these limitations are proper, but finds that the production is overdue and should be produced within fourteen days.

**Request No. 39**: All documents evidencing, reflecting, or concerning medical records and billing for patients listed in paragraph 70 of the Second Amended Complaint.

According to Defendants, the billing records for these patients have been produced, and the patient charts are being formatted for production. The Court finds that the patient charts should be produced within fourteen days.

**Request No. 40**: All copies of the Email from CEO Pat Michell to St. Joseph Executive Directors with the attachment "Invalid_Diagnosis_Codes_100214" mentioned in paragraph 68 of the Second Amended Complaint and all replies to that email or forwards of that email.

Defendants assert that they have agreed to produce the email, but have been unable to find it. The Court finds that the subject email should be produced within fourteen days.

**Request Nos. 41 and 42**: All documents evidencing, reflecting, or concerning medical records and related billing for all patients who had their diagnosis changed from Dementia or Adult Failure to Thrive to Alzheimer's.

Defendants argue that the request is unduly burdensome because it is not possible to determine which patients had their diagnoses changed without looking through every patient file. According to Defendants, they have agreed to produce the charts for the patients named in the pertinent allegations in the Complaint. The Court, however, finds that Defendants should produce responsive information for *all* patients at St. Joseph Hospice of Southern Mississippi from August of 2014 to December 31, 2014. This production should be made within fourteen days.

**Request No. 47**: All documents evidencing, reflecting, or concerning that indicate any communication, directive policy and/or procedure regarding St. Joseph providing Aricept, Namenda, or Excelon patches to patients with Alzheimer's.

According to Defendants, they have agreed to produce responsive documents. The Court finds that the production is overdue and should be produced within fourteen days.

**Request No. 48**: All documents evidencing, reflecting, or concerning medical records and corresponding billing information for parties set forth in paragraph 76 of the Second Amended Compliant.

Defendants assert that they have agreed to produce responsive documents. According to Defendants, they have produced the billing records for these patients and are in the process of producing the patient charts. The Court finds that the patient charts should be produced within fourteen days.

**Request No. 49**: The complete patient file, including all hand-written and electronic medical records and related billing to payers for all patients set forth in the Second Amended Complaint.

According to Defendant, they have agreed to produce responsive documents and have produced claims information for the named patients. Defendants are also in the process of producing patient charts for those patients who were named in Relators' "improper referrals," "changing patient diagnoses," and "quality of patient care" allegations. Defendants assert that Relators have not provided all of the patients' names.

The Court finds that Relators should provide the names of the patients within three days of the date of this order and Defendants should produce the patient charts for *all* patients named in the Second Amended Complaint within fourteen days of the production of the names.

**30(b)(6) Deposition of St. Joseph**

On February 7, 2020, Relators filed a Notice of 30(b)(6) Deposition of St. Joseph Hospice, LLC [74], identifying thirty-three topics of inquiry. In their Motion for Protective Order and to Quash [75], Defendants argue that the Notice [74] should be quashed because (1) all of the topics are too broad and lack specificity; (2) certain topics are only relevant to claims which have been dismissed; and (3) Topic No. 32 concerns a prior *qui tam* action which is irrelevant to this action.

Fed. R. Civ. P. 30(b)(6) allows a party to notice the deposition of a corporation and to specify the areas of inquiry. The Rule states, in part, the following:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6).

"The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The notice, however, must specify the areas of inquiry with reasonable particularity. If the notice does not meet this requirement, a party may seek a protective order pursuant to Fed. R. Civ. P. 26(c). Rule 26(c)(1) provides that "[t]he court may,

for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Courts, however, are mindful that the discovery rules should be accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert*, 441 U.S. at 177. "It is well established that the scope of discovery is within the sound discretion of the trial court." *Freeman*, 566 F.3d at 341.

Defendants argue that the deposition topics should be quashed because they cover 2013 to the present and all of the hospice locations. Consistent with the Court's rulings on written discovery, the Court finds that, at this time, the areas of inquiry should be limited to information from January 1, 2013 to December 31, 2014 relating to the hospices in Mississippi.[7] Additionally, the Court finds that Topic No. 4, which concerns "changing patient diagnosis codes," should be limited to information from August of 2014 to December 31, 2014.

Defendants argue that Topic Nos. 13, 21, 28, and 29 are relevant to dismissed claims. Defendants point out that the Court dismissed Relators' claims related to backdated Certifications of Terminal Illness and face-to-face attestations. *See* Order [61]. In their Response [81], Relators explain that their topics should not be interpreted to include dismissed claims. Relators specifically state that they will not inquire about the "dismissed allegations regarding backdated CTIs and/or Face-to-Face Allegations and/or Continuous Care Allegations."

Defendants also argue that the following topics are irrelevant to this action:

Topic No. 15: The corporate structure and relationships of St. Joseph Hospice and St. Joseph Holdings and their affiliates and subsidiaries.

Topic No. 32: Defendant's prior False Claims Act settlement and corporate integrity agreement with the United States.

---

[7] As the Court previously explained, the Court did not apply these limitations to the information previously produced in response to the May 2, 2018 administrative subpoena.

Concerning Topic No. 15, Relators argue that an inquiry into the corporate structures and relationships of the business entities is needed in order to identify the entities responsible for the wrongful conduct. The Court finds that Topic No. 15 is relevant and should not be quashed.

Concerning Topic No. 32, Relators argue that the information concerning the prior *qui tam* action are relevant to Defendants' knowledge of the False Claims Act and their knowledge concerning the submission of false claims to the Government. The Court finds that Topic No. 32 is relevant and should not be quashed.

Defendants also argue that certain topics are too broad and lack specificity. These topics include Topic Nos. 1, 2, 4, 6, 7, 8, 9, 11, 14, 17, 18, 20, 24, 25, and 26. In their Response [81], Relators provide clarification for many of the topics. In their Reply [84], Defendants recognized this, stating that Relators "describe the topics they intend to question Defendants about differently, and with more specificity, than the 30(b)(6) Notice did."

Local Rule 37 states that "[b]efore service of a discovery motion, counsel must confer in good faith to determine to what extent the issue in question can be resolved without court intervention." Additionally, Fed. R. Civ. P. 26(c) requires that a motion for protective order must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The parties' briefing reveals that they have failed to confer in good faith concerning the 30(b)(6) deposition notice and the specificity of Topic Nos. 1, 2, 4, 6, 7, 8, 9, 11, 14, 17, 18, 20, 24, 25, and 26.

Thus, the Court denies the Motion [75] as to Topic Nos. 1, 2, 4, 6, 7, 8, 9, 11, 14, 17, 18, 20, 24, 25, and 26 and instructs the parties to confer in good faith within seven days to resolve their disputes concerning these topics. Moving forward, Relators should note that unless they are

simply seeking the most basic, general information from the deponents concerning these topics, they should describe the topics with specificity.

    IT IS, THEREFORE, ORDERED that:

1. The Motion for Protective Order and to Quash [75] is GRANTED in part and DENIED in part as set forth herein.

2. The Motion to Compel [77] is GRANTED in part and DENIED in part as set forth herein.

    SO ORDERED this the 16th day of March, 2020.

                                      s/Michael T. Parker
                                      UNITED STATES MAGISTRATE JUDGE